**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF KENTUCKY -
LOUISVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>       *Plaintiff,* ) <br> ) <br> v. ) <br> )   Case No. 3:19-cr-29 (TBR) <br> TIMOTHY JOHN LEWIS, ) <br> ) <br>       *Defendant.* ) <br> ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Timothy John Lewis has filed three motions before this Court: a Motion for Disclosure of an ATF Firearm Trace, (Mot. for Firearm Disclosure), Dkt. 140, a Motion to Reconsider Suppressed Evidence, (Mot. to Reconsider), Dkt. 141, and a Motion for Disclosure of a Fingerprint Examination, (Mot. for Fingerprint Disclosure), Dkt. 142. The Government has responded to both disclosure requests, Disclosure Resp., Dkt. 144, and to the request for reconsideration, Reconsideration Resp., Dkt. 145. Lewis has replied, (Reply), Dkt. 148. As such, briefing is complete and the motions are ripe for adjudication.

Each motion is addressed, in turn, below.

**I.    MOTION FOR DISCLOSURE OF ATF FIREARM TRACE**

On December 28, 2021, Lewis asked this Court to enter an order requesting that the ATF be directed to perform and produce the results of a National Firearm Trace on the Smith and Wesson M & P .40 caliber handgun, serial # DYE0595. *See* Mot. for Firearm Disclosure. The Government states that two days later, on December 30, 2021, the United States provided in supplemental discovery the ATF Firearm Trace requested by Defendant. *See* Disclosure Resp. at

1. Lewis has not provided any information to the contrary. As such, the Court denies Lewis's Mot. for Firearm Disclosure as moot.

## II.     MOTION TO RECONSIDER SUPPRESSED EVIDENCE

On October 16, 2019, Lewis filed a motion to suppress evidence. *See* Motion to Suppress Evidence, (Mot. to Suppress), Dkt. 26. That motion was denied. *See* Order, Dkt. 46. Lewis now asks the Court to reconsider its 2019 decision, claiming that the traffic stop, seizure of his person, and the subsequent police searches were unconstitutional. *See* Mot. to Reconsider. In this motion, Lewis argues that the search of his vehicle was unconstitutional because the officer lacked a warrant. *See id.* The Government responds, arguing that the search was constitutional because the Officer pulled the vehicle over for a seatbelt violation. *See* Reconsideration Resp. To this, Lewis states that Officer Cundiff could not have observed whether the passenger in question—who was sitting in the middle seat of a 1994 B Series Mazda pickup truck—was wearing a center lap belt. *See* Mot. for Reconsideration at 3.[1]

"An officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law." *U.S. v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (citation omitted). "Probable cause exists if the facts, circumstances, and 'reasonably trustworthy information' would allow a person 'of reasonable caution' to believe that a crime has been committed." *United States v. Neuhard*, 770 F. App'x 251, 253 (6th Cir. 2019) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "This is 'a practical, nontechnical conception,' *ibid.*, and it 'requires only a probability or substantial chance of criminal activity,

---

[1] Lewis states in his reply: "There was never any allegation until now that the DRIVER was observed by Officer Cundiff prior to the stop not wearing a seatbelt." Reply at 2. Regardless of whether the Government alleges that Officer Cundiff observed the driver not wearing a seatbelt, the Court concludes that Officer Cundiff had probable cause to conclude that the middle passenger was breaking Kentucky law by not wearing a seatbelt, *see infra*.

not an actual showing of such activity,' " *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

Relevant to this case, Ky. Rev. Stat. Ann. § 189.126(6) requires both passengers and persons operating motor vehicles manufactured after 1981 on the public roadways of Kentucky to wear seatbelts, unless the person is a child, has a written statement from a qualified medical professional that he cannot wear a seatbelt, or is a letter carrier of the United States postal service engaged in the performance of his duties.

Although the Court previously held that "video footage of the arresting officer's body camera and dash cam" "affirmatively make clear that the search of the vehicle" was lawful, Lewis did not dispute at that time that the arresting officer observed the seatbelt violation. *See* Order at 3–4. Upon reviewing the Lewis's motion, the Government's response, and the video footage, the Court agrees with its earlier decision that the stop was lawful.

The video footage of Officer Cundiff's body camera clearly shows the officer telling the occupants of the vehicle that he pulled the vehicle over for a seatbelt violation. *See* Ex. 1, Dkt. 145. Officer Cundiff continued, stating that the middle passenger was the occupant who was not wearing a seatbelt. *See id.* Later statements in the video, as well as statements in the citation, are consistent with these observations. *See id.*; *see also* Ex. 3, Dkt. 145. Ultimately, regardless of the (alleged) fact that the middle seat passenger could only wear a lap seatbelt, the parties agree that the middle passenger was not wearing a seatbelt covering the shoulder/chest area. *See* Ex. 1; *see also* Mot. to Reconsider; Reconsideration Resp. The Court therefore concludes that Officer Cundiff, who saw three passengers in the front-row of a truck—with the middle person not wearing seatbelt over the shoulder/chest area—used practical, nontechnical thinking to conclude that there was a probability that the middle passenger was not buckled up. What's

more, since "witnessing a violation provides probable cause for a stop," and Lewis does not deny that the other passenger was not wearing a seatbelt (in fact, the video footage supports a finding that the middle passenger was unbuckled), it appears to the Court that Officer Cundiff witnessed the seatbelt violation. *United States v. Draper*, 22 F. App'x 413, 415 (6th Cir. 2001).

Moreover, the dash cam shows that Officer Cundiff had an unobstructed view into the Mazda pickup truck. *See* Ex. 2, Dkt. 145. No cars passed between Officer Cundiff and the vehicle at the applicable time. *See id.* Nor did the pickup truck have tinted windows or some other design that would have limited Officer Cundiff's view of the middle passenger. *See id.*

The Court therefore agrees with the previous order of Judge Boom and denies Lewis's Mot. to Reconsider.

### III.     MOTION FOR DISCLOSURE OF FINGERPRINT EXAMINATION

Lewis has filed a motion requesting that the ATF be directed to perform a fingerprint examination on the same handgun described *supra* Part I, and the ammunition recovered in this case. *See* Mot. for Fingerprint Disclosure. Here, Lewis provides two reasons as to why this examination could result in exculpatory evidence: first, there were at least two other people in the vehicle when the stop in question occurred, and second, the vehicle did not belong to Lewis. *See id.* at 1; *see also Brady v. Maryland*, 373 U.S. 83 (1963). The government responds, saying that the Louisville Metro Police Department Crime Scene Unit has already run these tests, which came back negative for latent prints. *See* Disclosure Resp. at 1. The Government maintains that additional fingerprint analysis by another agency is therefore unnecessary. *See id.* at 1–2.

Essentially, Lewis, without citing any authority, asks this Court to order the Government to conduct further fingerprint examination. *See* Mot. for Fingerprint Disclosure. But "*Brady* does not require the government to conduct a defendant's investigation or to assist in the

4

presentation of the defense's case," *United States v. O'Keefe*, 119 Fed. App'x 589, 592 (5th Cir. 2004), nor does *Brady* "impose an affirmative duty upon the government to take action to discover information which it does not possess," *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975). Indeed, the Government has disclosed the results of its fingerprint examination; the Government has not suppressed any information. *See Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that failure to test fingernail scrapings for DNA evidence was not suppression of evidence under *Brady*).

Accordingly, the Court denies Lewis's Mot. for Fingerprint Disclosure.

## IV.   CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Lewis's Mot. for Firearm Disclosure, Dkt. 140, is **DENIED AS MOOT**, Mot. to Reconsider, Dkt. 141, is **DENIED**, and Mot. for Fingerprint Disclosure, Dkt. 142, is **DENIED**.

**IT IS SO ORDERED**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**
January 26, 2022